**Ricky Lee GRUBBS, Appellant,**

v.

**Paul DELO, Appellee.**

No. 90–1664.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 10, 1990.

Decided Nov. 8, 1991.

Motion for Abeyance of Proceedings Pending Motion to Recall State's Mandate Denied Nov. 8, 1991.

Rehearing and Rehearing En Banc Denied Jan. 31, 1992.

Charles A. Siegel, III, St. Louis, Mo., argued, for appellant.

Stephen David Hawke, Jefferson City, Mo., argued, for appellee.

Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOODS,* District Judge.

BEAM, Circuit Judge.

Ricky Lee Grubbs was convicted of capital murder by the state of Missouri and sentenced to death. He appeals the district court's denial of his habeas petition. We affirm the judgment of the district court.

## I. BACKGROUND

On February 16, 1984, fire fighters were called to the scene of a mobile home fire in Miner, Missouri. They discovered the body of Jerry Russell Thornton inside the mobile home. Thornton's hands and feet were bound with neckties and he had suffered massive injuries: thirteen broken ribs, a cracked sternum, a laceration of the liver, damage to the small intestine, abrasions and lacerations on the face, a broken nose, a brain hemorrhage, and a large laceration of the neck, extending from the trapezius muscle to nearly the front of the left side of the neck.

The following day, Ricky Grubbs and his brother, Randy Grubbs, were arrested. The day after his arrest, Ricky Grubbs confessed to killing Thornton. In his written confession, Grubbs stated that he and his brother went to Thornton's trailer home on the afternoon of February 15. (Both brothers were acquainted with Thornton.) Grubbs said that he and his brother had been drinking beforehand and that Thornton was drinking when they arrived. According to Grubbs, shortly after they arrived, Thornton said that he did not like Grubbs and wanted him to leave. Grubbs said Thornton then came toward him and he became scared and struck Thornton repeatedly. When Thornton fell to the floor,

Grubbs and his brother "hog-tied" him with some of Thornton's neckties and Grubbs cut Thornton's neck with a knife. Before leaving the trailer home, the brothers took thirty dollars and some food stamps. Grubbs stated in his confession that he and his brother returned the following day and set the fire to destroy any evidence that might incriminate them.

In November 1985, after a pretrial hearing, the Missouri circuit court determined that Grubbs's confession would be admissible as evidence. A trial was held a few weeks later, in December, and Grubbs testified in his own defense. The proceedings, however, resulted in a mistrial when one juror, during a poll of the jury after it had submitted its verdict to the court, denied that the guilty verdict was his. A change of venue was granted and a second trial was held in March 1986. Grubbs did not testify at this trial, but his confession—which was essentially the only direct evidence that he had committed the crime—was admitted against him.[1] The jury convicted Grubbs of capital murder and he was sentenced to death.

In February 1987, the Missouri Supreme Court affirmed the judgment on direct appeal. *State v. Grubbs*, 724 S.W.2d 494 (Mo.) (en banc), *cert. denied*, 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987). Grubbs then filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 27.26 (repealed effective January 1, 1988; now governed by Rule 29.15). The post-conviction court denied relief and the Missouri Supreme Court affirmed this judgment in November 1988. *Grubbs v. State*, 760 S.W.2d 115 (Mo.1988) (en banc), *cert. denied*, 490 U.S. 1085, 109 S.Ct. 2111, 104 L.Ed.2d 672 (1989). In June 1989, Grubbs filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (1988). In late 1989, the district court is-

---

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. Both the Missouri Supreme Court and the district court refer in their opinions to Grubbs's *testimony* at his second trial. *See, e.g., State v. Grubbs*, 724 S.W.2d 494, 496 (Mo.) (en banc),

cert. denied, 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987); *Grubbs v. Delo*, 734 F.Supp. 395, 407 (E.D.Mo.1990). This is an error; Grubbs's confession was admitted as evidence, but Grubbs did not testify. *Accord* Respondent's Exhibit J, at 62 (post-conviction trial court's finding to this effect).

sued an unpublished order and memorandum finding a number of Grubbs's claims to be procedurally barred. *Grubbs v. Delo,* No. 89–1048C(1), Order and Memorandum (E.D.Mo. Dec. 27, 1989). In April 1990, the district court issued a published order and memorandum addressing the merits of Grubbs's remaining claims and denying his petition. *Grubbs v. Delo,* 734 F.Supp. 395 (E.D.Mo.1990).

## II. DISCUSSION

Our task in reviewing Grubbs's claims is made much easier by the district court's excellent memoranda. In fact, because the district court did its work very thoroughly and competently—and because many of Grubbs's claims are without merit—it is unnecessary for us to discuss at length several issues raised by Grubbs on appeal. Instead, we will address those matters that we believe contain Grubbs's most meritorious claims and those issues that are affected by cases decided since the district court's decision.[2]

### A. Double Jeopardy

■ Grubbs argued in the district court that his second trial violated the double jeopardy clause of the Fifth Amendment. The district court determined that the disposition of this issue by the Missouri post-conviction trial court rested on an adequate and independent state procedural bar.

Grubbs argues on appeal that the state procedural bar was not adequate. There may be some merit in Grubbs's argument, and we will discuss this aspect briefly, but if we cut through the procedural-bar chaff, so to speak, we find no merit in the underlying constitutional claim.

■ It is a basic doctrine of law that if a state court's resolution of an issue rests on a state law procedural ground that is "independent" of federal law and "adequate" to support the state court's judgment, a federal court will not review the issue in a habeas action. *See Coleman v. Thompson,* — U.S. —, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989). The difficulty in applying this doctrine, of course, lies in determining what constitutes an adequate and independent state law ground. For our purposes, it will suffice to state two guiding principles. First, a state court's discussion resolving an issue need not be confined entirely to the state law ground: if a state court addresses the merits of a federal claim in an alternative holding, the adequate and independent state-ground doctrine will still preclude federal habeas review. *See Harris,* 489 U.S. at 264 n. 10, 109 S.Ct. at 1044 n. 10. Second, a state procedural rule is not adequate unless it is strictly or regularly adhered to.

---

**2.** Most of Grubbs's claims deserve only a brief mention. Grubbs argues that his trial counsel was constitutionally ineffective for failing to have him testify at trial. He also argues that his trial counsel was ineffective for failing to preserve the carpet beneath Thornton's body as evidence. According to Grubbs, if the carpet had been preserved, a lack of blood on the carpet would have established that Thornton was dead before his neck was cut and, thus, "the issues of premeditation and aggravating circumstances would not have been submitted to the jury." Brief for Appellant at 21. Both of these claims are, as the district court held, procedurally barred and Grubbs fails to meet the "cause" and "prejudice" requirements of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), or some other exception to the doctrine of procedural bar. Furthermore, we believe that both claims are without merit.

Grubbs also argues that the following constitute either a violation of due process or a violation of his right to effective assistance of counsel: his trial counsel's failure to seek exclusion of a prospective juror (Meiseman) for cause; the trial judge's failure to sustain a motion to strike another prospective juror (Hooper) for cause; his trial counsel's failure to object to testimony regarding his post-arrest silence; his trial counsel's failure to establish a lack of blood on the carpet; his trial counsel's failure to object to testimony that there was blood on the carpet; his trial counsel's failure to present evidence of certain mitigating circumstances; and his trial counsel's failure to object to statements in the prosecutor's closing argument. In addition, Grubbs argues that an aggravating-circumstance jury instruction, which asked his sentencing jury to determine whether the murder "involved torture and depravity of mind," violates the eighth amendment and the principle established in *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). We have carefully reviewed all of these claims. We find they are without merit and we adopt the district court's reasoning.

If a state applies its rule inconsistently, we are not barred from reaching the federal law claim. *See Coleman,* 111 S.Ct. at 2568–69 (White, J., concurring); *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988).

The state post-conviction trial court stated the following in response to Grubbs's double jeopardy claim:

> This claim is not one properly cognizable in a 27.26 motion as it is a motion which could have been properly reviewed upon appeal. *Bradford vs. State,* 694 S.W.2d 760, 761 (Mo.App.1985). Further, that Movant's constitutional rights were not violated by having a second trial in this instance. For the reason that the trial court's ruling was justified by manifest necessity. *State vs. Franks,* 702 S.W.2d 853, 856 (Mo.App.1985).

Respondent's Exhibit J, at 83 (decision of St. Francois County Circuit Court). The district court determined that the first sentence quoted above constitutes an adequate and independent state procedural bar—that is, issues not raised on direct appeal in Missouri are not cognizable if raised for the first time in post-conviction proceedings. The last two sentences, according to the district court, merely state an alternative federal law holding.

Grubbs argues that the first sentence is not an adequate procedural bar because the post-conviction trial court failed to recognize an exception to the procedural rule for double jeopardy claims. We believe that there may be some problem with the adequacy of the state-law ground. There is some indication that the Missouri courts have not consistently followed their procedural rule.[3] But there is no need for us to work through the Missouri case law to resolve the question of the adequacy of the state-law ground for the procedural bar, for in the final analysis there is no merit to Grubbs's claim that his second trial was in violation of the double jeopardy clause. As we explained in the background, Grubbs *requested* a mistrial after a juror in his first trial stated during a poll that the guilty verdict "was not his separate, individual verdict." Respondent's Exhibit B, at 9. This decision to request a mistrial was not a Hobson's choice for Grubbs. Under Rule 29.01(d) of the Missouri Rules of Criminal Procedure, the trial judge could have either discharged the jury or directed it to retire for further deliberations. As a

---

3. Grubbs bases his argument on *Weir v. State,* 589 S.W.2d 256 (Mo.1979) (en banc). In *Weir,* the Missouri Supreme Court held that a double jeopardy claim—which, if successful, would permanently forestall a second trial—is cognizable for the first time in a post-conviction motion absent evidence that the petitioner *intentionally* failed to raised the claim earlier. *Id.* at 258. The *Weir* court explained that because of the nature of relief—that is, "not just the exclusion of evidence or a new trial after conviction but a final discharge"—there is no potential for petitioners to deliberately bypass state procedural rules. *Id.* Grubbs argues that because the post-conviction trial court did not make a finding on whether he intentionally did not raise the double jeopardy claim earlier, the "court's finding of procedural default does not rest on an 'adequate' state ground." Brief for Appellant at 28. We do not believe this lack of an express finding of intent renders the state ground inadequate, but we are troubled by the somewhat inconsistent approach that has been taken by Missouri courts—before and after *Weir*—on double jeopardy claims. The *Weir* court itself noted that prior to its ruling double jeopardy claims had been entertained for the first time in post-conviction "proceedings without apparent consideration or specific reference to the cognizability

issue." *Weir,* 589 S.W.2d at 258 n. 2. And since *Weir,* the Missouri appellate courts have not strictly adhered to their rule. *See, e.g., Smith v. State,* 627 S.W.2d 923, 924 n. 1 (Mo.App.1982) (court assumed it could decide double jeopardy claim when the litigants failed to mention whether the issue had been adjudicated on direct appeal or whether the case met the exception carved out in *Weir*); *Sours v. State* 603 S.W.2d 592, 608 (Mo.1980) (en banc) (Rendlen, J., dissenting) (criticizing majority for reaching the merits of a double jeopardy claim without first determining whether the petitioner had "deliberately by-passed orderly state procedures"), *cert. denied,* 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981).

If we did find an inadequate procedural bar, we would still have to consider the state's argument that Grubbs's failure to argue the double jeopardy issue on post-conviction appeal is another procedural default, for which there is no excuse to overcome the procedural bar. Ultimately, Grubbs's relief must be denied, so we prefer to cut through the procedural-bar morass and address the much simpler issue of the merits of Grubbs's claim. *See Long v. Iowa,* 920 F.2d 4, 6 n. 2 (8th Cir.1990) (appellate court may bypass procedural bar and address simpler issue of merits when relief is denied).

general rule, absent prosecutorial or judicial overreaching—neither of which is alleged in this case—a motion by a "defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution." *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971). Therefore, the double jeopardy clause was not violated by Grubbs's second trial.

### B. Grubbs's Confession

Grubbs argued in the district court that his counsel on direct appeal was constitutionally ineffective, under the standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for failing to argue to the Missouri Supreme Court that his confession was inadmissible. The district court determined that Grubbs had procedurally defaulted on this claim in state court and that no excuse exists to overcome the procedural bar. Grubbs does not deny on appeal that he procedurally defaulted, but he argues that the district court erred because "cause" for the default, under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), exists in his post-conviction trial counsel's ineffective assistance. We find no merit in Grubbs's underlying claim.

At the outset, we note that Grubbs does not explain, in any detail, why his confession was inadmissible.[4] We gather from oral argument and Grubbs's brief that his principal contention is that his confession was unconstitutionally obtained as a result of questioning after he had invoked his right to remain silent. Grubbs, however, also seems to make an argument that the confession was unconstitutionally obtained as a result of questioning after he had requested an attorney. Before we can determine whether Grubb's counsel on direct appeal was ineffective under *Strickland* for failing to argue that Grubbs's confession was inadmissible, and before we can determine whether post-conviction trial counsel's failure to argue the ineffectiveness of direct-appeal counsel constitutes "cause" under *Wainwright,* we examine the circumstances surrounding Grubbs's confession. If there is no basis for claiming that his confession was inadmissible, Grubbs's counsel on direct appeal cannot be considered ineffective for having failed to argue a meritless issue before the Missouri Supreme Court. *See Meyer v. Sargent,* 854 F.2d 1110, 1115–16 (8th Cir.1988) (no prejudice under *Strickland* when counsel on direct appeal fails to raise a meritless issue). Therefore, a brief background on Grubbs's claim is necessary for a full and clear resolution of this issue.

Before trial, Grubbs filed a motion to suppress his confession. This motion claimed, *inter alia,* that his confession had been unconstitutionally obtained as a result of continued questioning by law enforcement officers after he had invoked his right to remain silent and after he had requested an attorney. Respondent's Exhibit B, at 24–27; *see also* Respondent's Exhibit A, at 82–84. The Missouri trial court held a hearing on Grubbs's motion, at which the testimony of Grubbs, the county sheriff, and others revealed the following events leading up to Grubbs's confession.

Grubbs was arrested at about 8:30 p.m. on Friday, February 17, 1984. Respondent's Exhibit A, at 24. (His brother Randy had been arrested earlier that day and was held in custody at another location. *Id.* at 19.) When Grubbs was brought into custody, the county sheriff read a Miranda warning to him. *Id.* at 21, 63. According to Grubbs's testimony, he refused to answer any questions and requested an attorney. *Id.* at 63. There is some indication in Grubbs's testimony that questioning by the sheriff continued after this point.[5] *Id.* Ac-

---

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), for example, is the only case that Grubbs cites in his brief, despite assurances from Grubbs's counsel at oral argument that his brief cites cases—in addition to *Miranda*—that "support the proposition."

**5.** Grubbs's testimony is a little garbled:

And Bill Ferrell [the sheriff] read me my rights and he asked me, he said, "Ricky," he said, "Do you want to talk to us; you want to give us a statement?" I said, "No." I said, "I don't even want to talk to you." So he said, "Well," he said, "We know about the death of Jerry Thornton." He started telling me he knew about me killing Jerry Thornton. I

cording to the sheriff's testimony, Grubbs invoked his right to remain silent, but he did not request an attorney. *Id.* at 18, 25. (It is not clear from the sheriff's testimony, whether any questioning of Grubbs continued after Grubbs had invoked his right to remain silent.) Following this brief encounter (described by Grubbs as lasting "a little while"), Grubbs was placed in a cell overnight. *Id.* at 63.

The following day, at about 1:30 p.m., the sheriff and Grubbs met again. According to Grubbs, the sheriff initiated the meeting, asked him if he wanted to make a statement, and he refused. *Id.* at 64–65. At the pretrial hearing, the sheriff did not remember whether Grubbs initiated this meeting, but the sheriff testified that Grubbs did not refuse to make a statement. *Id.* at 25–26. According to the sheriff, Grubbs simply wanted to talk to his brother. *Id.* There is no dispute that after this brief encounter, Grubbs did speak to his brother, Randy, on the telephone (apparently to confirm whether Randy had been cooperating in the investigation). *Id.* at 64–65. According to Grubbs's testimony, his brother informed him that he was cooperating with officials. *Id.* at 65. After the telephone call, according to Grubbs, the sheriff asked him again if he wanted to make a statement and Grubbs told him no. *Id.* at 66. Grubbs was then promptly placed back in his cell with no further questioning. (Grubbs testified, "I said, 'No I don't want to [talk].' So he [the sheriff] took me and locked me back up." *Id.*) At about 3:30 p.m., according to the sheriff's testimony, Grubbs told him that he wanted to make a statement. *Id.* at 19. The sheriff testified that he then read the Miranda warning to Grubbs again, Grubbs signed a written waiver of his rights, and Grubbs confessed to the crime in a written statement. *Id.* at 15–20. It is not clear from the record whether Grubbs contacted the sheriff and volunteered the confession or

whether it was in response to further questioning.

Two weeks after the pretrial hearing, the trial judge denied Grubbs's motion to suppress his confession. The trial court made a ruling as follows: "[T]he court finds that the statements [of Grubbs] were given after a knowing [and] intelligent waiver of his rights were made [and] after his Miranda warnings were given to him explaining his constitutional rights. The [court] finds his statements were not coerced from him nor were they a result of a product of an illegal arrest." Respondent's Exhibit B, at 6 (Docket Sheet Entry, Circuit Court, Perry County, Mo., Nov. 27, 1985). Grubbs's statement to the sheriff was admitted as evidence against him (in fact, at his trial in March 1986, it was, as earlier indicated, the only direct evidence introduced to show that he had murdered Thornton).

At the conclusion of Grubbs's trial, his trial counsel raised the issue of the admissibility of the confession again in a motion for a new trial, thus preserving the issue for appeal. *See* Respondent's Exhibit B, at 145. On direct appeal, however, Grubbs's new counsel did not include the claim in Grubbs's brief and, as a result, the issue was not addressed by the Missouri Supreme Court. In post-conviction trial court, instead of alleging ineffective assistance of counsel on direct appeal, Grubbs argued that his counsel *at trial* was ineffective for not arguing that his confession was inadmissible. *See* Respondent's Exhibit J, at 2–9, 14–23 (pro se post-conviction petition and amended petition). The post-conviction trial court noted that Grubbs's trial counsel had in fact argued against the admission of Grubbs's confession. The court concluded that Grubbs's trial counsel was not constitutionally ineffective. *See id.* at 78–79. On post-conviction appeal, the Missouri Supreme Court affirmed and stated:

said, "Well, I don't really even want to talk to you." I said, "I want a lawyer."
So he kept—Well, Bill Ferrell told me, he said, "Well," he said, "We know about the death," like that. But we wasn't up there—We wasn't

up there [the interrogation room] real long, but we was up there for a little while. Then Bill Ferrell and Kenny Howell took me back downstairs [jail cell].
Respondent's Exhibit A, at 63.

[N]either movant's pro se 27.26 nor his amended motion allege ineffective assistance of *appellate counsel* for failure to raise the admissibility of the defendant's statement on direct appeal. "It is fundamental that issues not raised in a Rule 27.26 motion may not be considered on appeal." *Walker v. State,* 715 S.W.2d 261, 262 (Mo.App.1986).

*Grubbs,* 760 S.W.2d at 120 (emphasis added).

In his federal habeas petition, Grubbs claimed that his counsel on direct appeal was constitutionally ineffective for failing to argue that his confession was inadmissible. The district court decided that the resolution of the issue by the Missouri Supreme Court rested on an adequate and independent state ground. The district court also held that the failure of Grubbs's post-conviction trial counsel to raise the issue cannot constitute cause because no constitutional right to counsel exists in state post-conviction proceedings. *See Grubbs,* Order and Memorandum, at 1461 n. 1.

As Grubbs correctly notes, a few months after the district court issued its final order and memorandum this court expressly stated that "ineffective assistance of post-conviction counsel *can* be 'cause' for purposes of lifting a procedural bar." *Simmons v. Lockhart,* 915 F.2d 372, 376 (8th Cir.1990) (emphasis added). This rule is brought into question by the Supreme Court's recent opinion in *Coleman v. Thompson.* We will not, however, address that issue here because it is clear that there is simply no merit to Grubbs's underlying claim that his confession was inadmissible.

First, we note the relevant principles of law. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court "established a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present. *Miranda* did not hold, however, that those rights could not be waived." *McNeil v. Wisconsin,* —— U.S. ——, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991). If the state can establish that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel," his statements elicited during questioning are admissible. *Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that once a suspect asserts a right to counsel, the interrogation must cease and he cannot be approached for further questioning "until counsel has been made available to him." *Id.* at 484–85, 101 S.Ct. at 1885. If questioning does resume, "the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." *McNeil,* 111 S.Ct. at 2208. If a suspect exercises the right to remain silent, but does not request counsel, subsequent statements are admissible if law enforcement officers "scrupulously honored" the suspect's right to remain silent. *Michigan v. Mosley,* 423 U.S. 96, 103, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975).

Second, we note the standard under which we determine the facts as they apply to Grubbs's claim. As we recently explained in *Hill v. Lockhart,* 927 F.2d 340 (8th Cir.1991), under the Supreme Court case of *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985),

[t]he admissibility of a defendant's confession is a mixed question of law and fact and as such merits independent consideration by a federal court in a habeas proceeding. However, "subsidiary factual questions such as ... whether the police in fact engaged in the intimidation tactics alleged by defendant," involved in a state court's determination of voluntariness are factual determinations entitled to the presumption of correctness under 28 U.S.C. § 2254(d) (1988).

*Hill,* 927 F.2d at 346 (quoting *Miller,* 474 U.S. at 112, 106 S.Ct. at 450–51).

Applying these principles to Grubbs's case, it becomes clear that there is no merit to Grubbs's assertion that his confession was inadmissible (thus, his coun-

sel on direct appeal could not have been ineffective for failing to argue the issue). The trial court expressly ruled that Grubbs gave his confession "after a knowing [and] intelligent waiver of his rights." The judge did not make an explicit factual finding on whether Grubbs asked for an attorney, but the implication of the court's ruling is that the court decided Grubbs had not made such a request, thus believing the sheriff's testimony and not Grubbs's. *See Winford v. Swenson,* 517 F.2d 1114, 1118 (8th Cir.1975) ("federal courts sitting in habeas corpus may, in the absence of clear expression by the state court, reconstruct implied findings of fact and interpolate the constitutional criteria applied"). We must accept such a factual finding by the state court, so no violation of the rule established in *Edwards* can be said to exist. Likewise, after a careful review of the record, we can see no violation of *Mosley;* we believe that Grubbs's right to remain silent was scrupulously honored by the police. We also agree with the trial court's finding that Grubbs's statement was not coerced from him.

### C. Error of Attorney on State Post-Conviction Appeal

■ Grubbs argued in the state post-conviction trial court that his trial counsel was constitutionally ineffective for failing to conduct a reasonable investigation into witnesses who could testify that he was intoxicated on the day of the crime and, thus, establish that he was incapable of forming the requisite intent to commit capital murder. Again, the post-conviction court was the first forum in which Grubbs could effectively raise the ineffective assistance claim. Following an evidentiary hearing, the post-conviction trial court concluded that Grubbs's trial counsel had not been ineffective. *See* Respondent's Exhibit J, at 74–75. Grubbs did not pursue the issue on post-conviction appeal.

In his federal habeas petition, however, Grubbs again argued that his trial counsel was constitutionally ineffective for failing to reasonably investigate the availability of possible witnesses. The district court ruled that Grubbs's failure to pursue this issue on state post-conviction appeal constituted a procedural default that bars review in federal habeas. The district court rejected Grubbs's argument that ineffective assistance of counsel on post-conviction appeal can constitute cause to overcome the procedural default. On appeal to our court, Grubbs does not deny that a procedural default occurred, but he argues that the district court erred on the issue of cause. We disagree and base our analysis and conclusion on the Supreme Court's recent decision in *Coleman v. Thompson.*

The issue resolved in *Coleman,* in fact, is nearly identical to the one raised by Grubbs. Coleman argued in state habeas trial court that his counsel was constitutionally ineffective during trial, sentencing, and direct appeal. Under state procedural law, the state habeas trial court was the first forum in which Coleman could raise an ineffective assistance claim. *Coleman,* 111 S.Ct. at 2567. After holding an evidentiary hearing, the state habeas court ruled against Coleman. Coleman's attorney then filed a notice of appeal from the court's judgment. The notice, however, was filed three days past the deadline established by state court procedures and the state supreme court eventually dismissed the appeal on that basis.[6] *Id.* at 2552–53. In federal habeas, Coleman argued that his attorney's error in failing to file a timely appeal constituted ineffective assistance of counsel and thus cause for the procedural default. *Id.* at 2567.

The Supreme Court considered Coleman's claim in two parts. In the first part, the Court reviewed in general the circumstances under which an attorney's error can constitute cause. It noted that states are not constitutionally obligated to provide counsel in state post-conviction proceedings. *Id.* at 2566–67; *see Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (no constitutional right

---

**6.** Whether there was an adequate and independent procedural bar was another issue in the case, but the Supreme Court's discussion on that point is of no consequence to the issue presented here by Grubbs.

to an attorney in post-conviction proceedings); *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (applying *Finley* to capital cases). Thus, a petitioner "must bear the burden of a failure to follow state procedural rules" because the error cannot be imputed to the state. *Coleman*, 111 S.Ct. at 2567.

In the second part, the Court considered Coleman's argument that there must be some exception for those cases involving constitutional claims that can only be raised in state post-conviction proceedings. "[A]t least as to these claims," Coleman argued, "attorney error in state habeas must constitute cause." *Id.* The Court declined to consider this question broadly because one state court—the state habeas trial court—had addressed Coleman's claim and the effectiveness of Coleman's counsel before that court was not at issue. The Court explained that indigent criminal defendants have a right to appointed counsel "in [their] first appeal as of right" in state court and that that "right encompasses a right to effective assistance of counsel." *Id.* at 2568. Thus, because the state habeas trial court considered Coleman's claim, and he was represented by counsel which he did not claim was ineffective, he "had his 'one and only appeal' " as of right. *Id.* In other words, Coleman's state collateral evidentiary hearing was the functional equivalent of the one appeal to which every defendant is entitled; and, because the right to counsel does not extend beyond the first criminal appeal of right, Coleman cannot claim a right to effective assistance of counsel in his appeal from the state habeas trial court's decision.

All this results in the same conclusion for Grubbs. The Missouri post-conviction trial court held an evidentiary hearing to consider his claim of ineffective assistance of trial counsel, and it denied his claim. He cannot claim to be entitled to a right to effective assistance on appeal from that determination. Cause cannot exist. His claim fails.

### D. Lesser–Included Offense Instruction

Grubbs argues that he was denied due process, under the Eighth and Fourteenth Amendments, when the state trial court failed to instruct the jury on a lesser-included offense of felony murder (i.e., murder in the course of theft). This is a different claim than Grubbs presented below. In the district court, Grubbs claimed that his post-conviction trial counsel was constitutionally ineffective for "failing to make an argument concerning instructional error." *Grubbs*, Order and Memorandum, at 5. The district court ruled that Grubbs's claim "is not cognizable on a federal habeas corpus action." *Id.* (relying on *Williams v. Lockhart*, 849 F.2d 1134, 1139 (8th Cir. 1988).) Grubbs's failure to present his due process claim to the district court precludes appellate consideration of the issue. *See Warden v. Wyrick*, 770 F.2d 112, 114 (8th Cir.1985).

### E. Supporting Evidence for Two Aggravating Circumstances

In the district court, Grubbs argued that two of the three statutory aggravating circumstances found to exist by his sentencing jury were not supported by the evidence and thus were improperly submitted to the jury. Grubbs argued further that as a result of this impropriety his death sentence should be vacated. The two aggravating circumstances were: (1) that Grubbs murdered Thornton "for the purpose of receiving money or any other thing of monetary value," and (2) that the murder was committed "for the purpose of preventing" Grubbs's lawful arrest. Respondent's Exhibit B, at 131 (Jury Instruction No. 17). The district court reviewed Grubbs's claim under a *de novo* standard and agreed with Grubbs that there was not enough evidence to submit these two aggravating circumstances to the jury. The district court noted a concurring opinion in Grubbs's direct appeal, by Judge Blackmar of the Missouri Supreme Court, that reached a similar conclusion. *See Grubbs*, 724 S.W.2d at 502 (Blackmar, J., concurring). The district court, however, did not agree with Grubbs's contention that his death sentence should be vacated; the court explained that the "remaining aggravating factors might well have been sufficient to outweigh any

existing mitigating factors." *Grubbs,* 734 F.Supp. at 407.

Grubbs argues on appeal that the district court applied the wrong standard in determining the effect of the improperly submitted aggravating circumstances. According to Grubbs, the district court's conclusion that the remaining aggravating circumstances "might well have been sufficient" is the wrong test. Grubbs argues that under *Barclay v. Florida,* 463 U.S. 939, 958, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983), the question to be asked instead is whether "the elimination of improperly considered aggravating circumstances could not possibly affect the balance" of aggravating and mitigating factors. We need not address this question because we disagree with the district court's conclusion that the factual record does not support the jury's finding. We base our analysis on the Supreme Court's decision last year in *Lewis v. Jeffers,* —— U.S. ——, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).

*Jeffers,* which was decided after the district court issued its decision in Grubbs's case, held that a federal court's review of a state court's finding of a facially constitutional aggravating circumstance should be under the "rational factfinder" standard established in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)—not a *de novo* standard. *Jeffers,* 110 S.Ct. at 3102. The Court explained that although the standard in *Jackson* was established in the context of determining whether evidence supported the elements of a substantive offense, the rationale for such a standard applies just the same to state court findings of aggravating circumstances. It is " 'the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts' " and this role of the factfinder " 'as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' " *Id.* 110 S.Ct. at 3103 (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789). After reviewing the record, and applying the rational factfinder standard, we conclude, as the Missouri Supreme Court did on direct appeal, that there is sufficient evidence to support a finding of the two aggravating circumstances which Grubbs believes should not have been submitted to his sentencing jury.

■ The evidence is not overwhelming, but we cannot conclude that the jury's finding was irrational. Grubbs and his brother stole thirty dollars and some food stamps from Thornton (both apparently from the billfold on Thornton's body) on the day of the murder. *See* Trial Transcript vol. II, at 442. A rational juror could infer from this fact that Grubbs and his brother went to Thornton's trailer for the purpose of taking the money and food stamps, and thus that Grubbs committed the murder "for the purpose of receiving money or any other thing of monetary value" (i.e., first aggravating circumstance above). As the state points out in its brief, the Missouri Supreme Court has interpreted and applied this aggravating circumstance in just such a way many times before, albeit usually with more evidence to link the murder to the receipt of money or other things of monetary value. *See, e.g., State v. Jones,* 749 S.W.2d 356, 364–65 (Mo.) (en banc) (Judge Blackmar held aggravating circumstance was supported by the evidence because defendant committed the murder so that he could steal the victim's car), *cert. denied,* 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988); *State v. McDonald,* 661 S.W.2d 497, 502–06 (Mo.1983) (en banc) (murder that was committed in the course of robbery came within the ambit of the aggravating circumstance), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The inference that Grubbs and his brother came to Thornton's trailer for the purpose of taking Thornton's money is further supported by the fact that Grubbs and his brother wore gloves during the crime (although Grubbs stated in his confession that he could not remember when they put them on). *See* Trial Transcript vol. II, at 442.

■ The second aggravating circumstance—that the murder was committed

for the purpose of preventing Grubbs's lawful arrest—can also be inferred from the evidence by a rational juror. If one infers that Grubbs and his brother went to Thornton's home to rob him of his money, one can also reasonably infer that Grubbs and his brother murdered Thornton to ensure that they would not be reported and arrested. Because the two aggravating circumstances were properly submitted to the jury and supported by the evidence, the jury's balancing of aggravating and mitigating circumstances is unchanged.[7]

### F. Mitigating Circumstances Instruction

In the district court, Grubbs challenged the constitutionality of a jury instruction on mitigating circumstances under *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Grubbs argued that Instruction No. 19 violates *Mills* because it required that the jurors unanimously find the existence of a mitigating circumstance before weighing it against the aggravating circumstances. Because Grubbs had not presented this claim in any state court, the district court held that he had procedurally defaulted on the claim. The district court also determined that Grubbs's procedural default could not be excused.[8] *Grubbs*, 734 F.Supp. at 406. Grubbs presents two arguments on appeal to overcome the procedural default.

First, Grubbs argues that his attorney's failure to raise a *Mills* claim constitutes ineffective assistance of counsel and, thus, cause for the procedural default. We disagree and follow our recent opinion in *Schlup v. Armontrout*, 941 F.2d 631 (8th Cir.1991), which involved the same jury in-

---

7. The dissent quotes extensively from the opinion of the federal district court and from Justice Blackmar of the Missouri Supreme Court, both deciding that the evidence does not support these aggravating circumstances. Both judges, however, also voted to deny relief to Grubbs. The dissent also argues that we reach our conclusion "by piling an inference upon an inference" and that our "theory" "hangs by a chimerical thread." Colorful language indeed. The first aggravating circumstance, however—that Grubbs murdered Thornton for the purpose of receiving money—does *not* require an inference upon an inference. The undisputed facts are that Grubbs murdered Thornton and that Grubbs and his brother took Thornton's money and food stamps after they murdered him. By drawing a single inference, a reasonable juror could conclude that Grubbs murdered Thornton for pecuniary gain. The second aggravating circumstance—that Grubbs murdered Thornton for the purpose of preventing his lawful arrest—does require a further inference, but it is not so attenuated as to be unreasonable. The dissent is wrong to dismiss the Supreme Court's decision in *Jeffers* as inconsequential on the basis that "no evidence exists relating to the aggravating circumstances." The evidence does exist and rational inferences that support the finding of the aggravating circumstances can be drawn from it.

Finally, in support for its conclusion that no basis for the aggravating circumstances exists, the dissent also quotes Justice Blackmar's "cogent" observation that "[t]his case seems to have arisen out of a drinking session." If this perception by Justice Blackmar is meant to convey the idea that Thornton and the Grubbs brothers were drinking together at the time of the mur-

der, the statement lacks evidentiary support. There is evidence that all parties had been drinking at an earlier time. There is no evidence, however, that Thornton invited Grubbs to his home (in fact, the evidence suggests just the opposite—that he did not want Grubbs in his home); and there is no evidence that either of the Grubbs brothers had ever before been to Thornton's trailer for a drinking session or for any other purpose. Grubbs confessed that he killed Thornton *shortly after arriving* at the trailer; and Grubbs confessed that he wore gloves while committing the crime. There is simply no substantial evidence to support the dissent's theory of how the crime occurred and the evidence which *does* exist does not provide an explanation that would override the reasonable inferences that might have been drawn by the jury to support its finding of the aggravating circumstances.

8. In its first order and memorandum, the district court held that cause for the default existed because the legal basis for a *Mills* challenge was unavailable at the time of the state court proceedings. *Grubbs*, Order and Memorandum, at 11. The court also held that prejudice existed because if a *Mills* challenge had been timely made there was a reasonable probability that the result of Grubbs's proceeding would have been different. *Id.* In its second order and memorandum the district court reversed itself and explained that cause did not exist because the Eighth Circuit had recently held that " 'the tools with which to make a *Mills* argument' have been available since *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)." *Grubbs*, 734 F.Supp. at 406 (citing *Smith v. Armontrout*, 888 F.2d 530, 545 (8th Cir.1989)).

struction language.[9] In *Schlup,* we held that the failure of Schlup's trial counsel to raise a *Mills* claim did not constitute ineffective assistance of counsel under the principles of *Strickland. Id.* at 640. Because Grubbs's case is indistinguishable from *Schlup,* his counsel was likewise not constitutionally ineffective. *See also Gilmore v. Delo,* 908 F.2d 385, 387 (8th Cir. 1990) (second habeas petition; rejecting argument that counsel's failure to object along the lines of *Mills* constitutes ineffective assistance of counsel), *petition for cert. filed,* (Aug. 28, 1990); *Smith v. Armontrout,* 888 F.2d 530, 545 (8th Cir.1989) (*Mills* claim, though available at time of trial in 1981, "was not so obvious or so likely to succeed that trial counsel can now be charged with ineffective assistance for failing to raise it").

█ Second, Grubbs argues that he can overcome the procedural default under the probable innocence exception of *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986).[10] "In the penalty-phase context, this exception will be available if the federal constitutional error alleged probably resulted in a verdict of death against one whom the jury would otherwise have sentenced to life imprisonment." *Smith,* 888 F.2d at 545. The burden is on Grubbs to provide an affirmative answer to the following question: "if the jury had been told, in compliance with *Mills,* that any mitigating circumstance, even if not unanimously found by the jury, could be weighed, would it probably have fixed the punishment at life in prison?" *Id.* In our judgment, the answer is no. Grubbs's sentencing jury found three statutory aggravating circumstances to exist and several other nonstatutory aggravating circumstances (i.e., that Grubbs had been previously convicted of four counts of burglary, one count of stealing, theft of property, and armed robbery). Although Grubbs's sentencing jury was not required to specify the mitigating circumstances that it found to exist, from our review of the record, and given the nature of the crime, we cannot say that the jury would have fixed Grubbs's punishment at life if it had been instructed in the way Grubbs argues is required under *Mills.*

## III. CONCLUSION

We have considered all of the claims raised by Grubbs and find them to be either procedurally barred or without merit. Accordingly, the judgment of the district court is affirmed.

BRIGHT, Senior Circuit Judge, dissenting.

In my view, when the state seeks to put a person to death upon conviction of a capital crime, it must follow the law with a reasonable degree of exactness and courts should not ignore or overlook any mandate of the law.

Missouri did not do so in this case. The state circuit court permitted the jury to sentence Grubbs to death by execution

---

**9.** The following is the jury instruction language that Grubbs claims violates *Mills:*

> If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.

Respondent's Exhibit B at 136. The Missouri Supreme Court has ruled that this instruction does not violate *Mills. See State v. Petary,* 790 S.W.2d 243, 245 (Mo.) (en banc), *cert. denied,* — U.S. —, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990); *State v. Smith,* 781 S.W.2d 761, 768 (Mo.1989) (en banc), *vacated and remanded,* —

U.S. —, 110 S.Ct. 1944, 109 L.Ed.2d 306, *aff'd on remand,* 790 S.W.2d 241 (1990). We express no opinion on the merits of this claim.

**10.** It is not clear whether a probable innocence analysis comes under the cause and prejudice approach of *Wainwright* or whether such an analysis is to be considered separately from cause and prejudice. The Supreme Court suggests the former in *Coleman. See Coleman,* 111 S.Ct. at 2564 ("We also explained in *Engle* that the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'"). This question, of course, has no bearing on the outcome of Grubbs's case. Our standard of review and conclusion are the same regardless of how "probable innocence" is categorized.

when no evidence existed to support two of the aggravating circumstances: (1) that Grubbs committed murder "for the purpose of receiving money or any other thing of monetary value," and (2) "for the purpose of preventing a lawful arrest" of Grubbs.

With respect to the aggravating circumstances, here in question, all that the Missouri Supreme Court offers are these bare statements:

> Approximately thirty dollars and some food stamps were taken from the victim's trailer. The next day defendant and his brother returned to the trailer in order to set it afire and destroy the evidence. Late that evening, the fire department was summoned to put out the fire and Thornton's body was discovered.

State v. Grubbs, 724 S.W.2d 494, 496 (Mo.) (en banc), cert. denied, 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987), and this bare conclusion that "[t]he evidence previously recited demonstrates that a reasonable juror could find these aggravating circumstances to be present." Id. at 500.

Justice Blackmar's concurrence, more to the point, states:

> I am also concerned about the statutory aggravating circumstances found by the jury. I am aware of nothing in the record to support the finding that the defendant killed "for the purpose of preventing his lawful arrest." The fact that the defendant and his brother wore gloves in February, and the fact that money and food stamps were missing (but not found on the defendant), provide, at the most, scanty support for the assertion that the killing was committed "for the purpose of receiving money or [any] other thing of value."

Id. at 502.

The federal district court in reviewing the record observed:

> Ground L is petitioner's claim that the trial court improperly submitted to the jury two aggravating circumstances not supported by the evidence: (1) that petitioner committed the murder "for the purpose of receiving money or any other thing of monetary value," and (2) that the murder was committed "for the pur-

> pose of preventing a lawful arrest" of petitioner.... The Missouri Supreme Court rejected this contention on direct appeal, holding that a reasonable jury could have found, based on the evidence, that these circumstances existed. Grubbs, 724 S.W.2d at 500. In his concurrence, [Justice] Blackmar disagreed with that holding. Id. at 502. Based on a careful review of the trial record, this Court makes it own determination of this question of law, and in so doing so is in agreement with [Justice] Blackmar....

Grubbs v. Delo, 734 F.Supp. 395, 406 (E.D.Mo.1990) (adopting the passage from Justice Blackmar's concurrence quoted supra, at 1472).

The federal district court then ruled that:

> The only direct evidence with respect to the missing money and food stamps was petitioner's testimony that his brother Randy, who was also involved in the killing, took them before leaving the trailer. The evidence suggests that the gloves were worn so as not to leave incriminating fingerprints on the knives with which the victim was cut; the record provides no basis whatsoever for any connection between the gloves petitioner and his brother wore at the scene and any preexisting purpose of pecuniary gain. This negligible evidence is insufficient to support a finding beyond a reasonable doubt that petitioner killed the victim for monetary gain.

> Even less support exists in the record for a reasonable finding that the murder was designed to prevent petitioner's arrest. The Court suspects that the evidence that petitioner and his brother later returned to the scene and set the trailer on fire in an attempt to conceal the murder was somehow construed by the jury as evidence of this aggravating circumstance, but such an inference is backwards: the fire was set for the purpose of preventing arrest for the murder, perhaps, but the murder itself had no apparent purpose of evading arrest. The Court believes, then, that both of the challenged aggravating circumstances were erroneously submitted to the jury.

*Id.* at 406–07 (footnote and citation to the record omitted).

The majority conceived a new scenario, regarding aggravating circumstances, by piling an inference upon an inference to arrive at a conclusion that a "rational juror" might find that defendant and his brother went to the victim's home to rob him, then later murdered the victim in order to avoid arrest for the robbery. *Supra,* at 1469–70. That theory, it seems to me, hangs by a chimerical thread, without support in the record or prior judicial opinions.

This writer need not add to the perceptive findings of the district court and the apt observation of Justice Blackmar. I disagree, however, with any conclusion that the death penalty would have been imposed, absent these mistaken conclusions by the jury based upon the improper submission of aggravating circumstances. Though I do not dispute a finding that the murder was aggravated by "outrageously or wantonly vile" circumstances, no court should invade the jury's province and say that the jury would have decreed death in this case on the basis of this single aggravating circumstance.

I would observe that *Lewis v. Jeffers,* —— U.S. ——, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), cited by the majority, does not change the analysis, inasmuch as no evidence exists relating to the aggravating circumstances, here in question.

Finally, as Justice Blackmar cogently observed in his concurring opinion:

> This case seems to have arisen out of a drinking session.[1] The killing was shocking and senseless, but numerous life sentence cases are reported in which the ultimate punishment is much more appropriate than in this case (if, indeed, we must depart from the practice of nations who follow the western tradition in ex-

acting the death penalty). The defendant had numerous convictions, but none for major offenses. His is an unlikely selection for the death sentence, when some juries assess it and some do not.

*Grubbs,* 724 S.W.2d at 502 (footnotes omitted).

Accordingly, I would grant habeas relief in this case and require that the State of Missouri retry the penalty phase of the trial or reduce the sentence to life imprisonment without the possibility of parole.

---

[1] This comment relating to drinking seems supported by Chief Justice Higgins' opinion for the Missouri Supreme Court, stating in part:
> Defendant testified that he and his brother had been drinking when they went to the trailer. Although they entered the trailer with Thornton's permission, Thornton, who had been drinking heavily, told defendant he did not like him and wanted him to leave.

*State v. Grubbs,* 724 S.W.2d 494, 496 (Mo.) (en banc), *cert. denied,* 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987).